UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| FREDERICK R. RITCHIE,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>FEDERAL EXPRESS CORP.,<br><br>　　　　Defendant. | Case No. C04-1753L<br><br>ORDER DENYING PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

## I. INTRODUCTION

This matter comes before the Court on "Plaintiff's Motion for Partial Summary Judgment" (Dkt. #112) and "Defendant's Motion for Summary Judgment" (Dkt. #121). Defendant Federal Express seeks summary judgment on all six of plaintiff's claims: (1) breach of express contract; (2) breach of implied contract; (3) breach of a promise for specific treatment; (4) promissory estoppel; (5) negligent infliction of emotional distress; and (6) intentional infliction of emotional distress. Plaintiff moves for partial summary judgment on his claim for breach of a promise for specific treatment. For the reasons discussed below, the Court grants defendant's motion for summary judgment. Plaintiff's motion for partial summary judgment is denied.

ORDER DENYING PLAINTIFF'S PARTIAL MOTION
FOR SUMMARY JUDGMENT AND GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT- 1

## II.  FACTUAL BACKGROUND

**A.    Employment Agreements and Handbooks**

Federal Express recruited and hired Frederick Ritchie on November 2, 1983.  After accepting Federal Express' offer, Ritchie signed a written employment agreement ("Employment Agreement") as part of his employment application which contained the following language under the headline "**IMPORTANT**":

> should I be given employment either in the position applied for or any other, now or hereafter, such employment shall be for an indefinite period and may be terminated at any time without notice or liability for wages or salary, except such earned at date of such termination, and without any other liability whatsoever (for the purposes of this paragraph, wages or salary earned at the date of termination shall only include pay for time worked, and shall not include pay for accrued vacation, sick leave or the like).  That all terms and conditions of my employment, except to the extent covered specifically by this contract or any other valid contract between Company and me (or someone legally acting on my behalf) shall be determined and governed by Company's Policies and Procedures Manual, as same may be amended from time to time hereafter (a copy of which, together with all amendments, shall at all times be available to me).  That my continued or permanent employment will be contingent upon completion of all employment requirements of whatever position I may hold to complete satisfaction of Company.

Declaration of Fred Ritchie ("Ritchie Decl.") (Dkt. #131), Ex. 3.

Within three years, Ritchie was promoted to the position of Technology Services Field Manager for the Pacific Northwest District.  He remained a manager for seventeen years.  As a manager, he frequently referred to the Policies and Procedures Manual ("People Manual") that is referenced in the Employment Agreement.  The People Manual, which Ritchie last received in November 2002, contained a disclaimer similar to the one contained in Ritchie's Employment Agreement:

> This manual is intended solely as a guide for management and employees during employment.  It is not a contract of employment, and no such contract may be implied from its provisions.  Nothing in this manual shall be construed to abrogate the employment agreement signed upon application for employment preserving the

ORDER DENYING PLAINTIFF'S PARTIAL MOTION
FOR SUMMARY JUDGMENT AND GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT- 2

> Company's and the employee's right to terminate this relationship at the will of either party. The provisions of this manual may be modified, amended or deleted by the Company at any time at its sole discretion without prior notice.

Declaration of Holly A. Harris ("Harris Decl.") (Dkt. #121), Ex. 6. Policies contained in the People Manual are also referenced in the Employee Handbook. Ritchie received new editions of the Employee Handbook in 1986, 1995, 1998, and 2002. He signed an acknowledgment after receiving each new edition, and the 2002 acknowledgment stated the following:

> The FedEx Express Employee Handbook is not a contract of employment, nor should its provisions be read or implied to provide for one. Your specific rights as an employee are governed by the Employment Agreement you signed in your employment application. For more specific guidelines, refer to the PEOPLE Manual and Your Employee Benefits book.
>
> Official personnel policies, as found in the PEOPLE Manual are referenced throughout the Employee Handbook and in the index.

Harris Decl., Ex. 7.

**B.    Employee Complaints Relating to Ritchie**

Management at Federal Express received two complaints relating to the behavior of Ritchie in late December 2002 and early January 2003. The first complaint originated with Renee Moore, a non-management employee, who notified Dawn Melillo, a Senior Human Resources Manager, that Ritchie had made an inappropriate comment to her while riding an elevator at work. She described the incident in a statement included in her EEO complaint:

> I was taking a small box with some letters on top of it down to the drop box in the parking garage on floor P2 last night when I got to parking garage elevators I came upon two co-workers (Sandra Elion and Fred Ritchie) we all three got onto the elevator and Fred said to me "here let me get that box" and I said "no it's ok it's not heavy" and he said "no let me help you I wouldn't want you to strain your milk sacks." I was very humiliated and upset, I said to Fred "You're way out of line!" and then I got off the elevator on P2 and both Sandra and Fred continued down the elevator. I am very tired of his sexual innuendoes around the office. Everyday he asks me if I have missed him. I want him to stop. Fred talks to women in the District Office like this all the time and no-one says anything about it they just put up with it. If he is in the breakroom or copy room when I go in there I usually turn around because I don't want to hear any of his

ORDER DENYING PLAINTIFF'S PARTIAL MOTION
FOR SUMMARY JUDGMENT AND GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT- 3

1 rude comments.

2 Declaration of Patrick L. McGuigan ("McGuigan Decl.") (Dkt. #113), Ex. 9. Plaintiff does not
3 dispute having the conversation, but instead maintains that he stated "[y]ou'll bust your milk
4 *sack* lifting that thing." Declaration of Richard S. McConnell ("McConnell Decl. II") (Dkt.
5 #123), Ex. C (emphasis added). He denies that he intended the statement to have a sexual
6 dynamic and argues instead that the phrase simply meant to "strain your guts" and that he has
7 long used this phrase with both men and women. Id.

8 The second incident occurred on the same day, December 30, 2002, and involved another
9 non-management employee, Michelle Piza. She documented her complaint in an e-mail to
10 Senior Human Resource Representative Holly Harris on January 6, 2003:

> On Monday, 12/30/02, I was in our lunch room and present at the time were Fred Ritchie, Geri Jerguson, and another male employee that I have never seen before. The Friday prior, Geri and I walked down 20 flights of stairs so I asked her if her legs were sore and she said no and I said mine were real sore from the walk. Fred Ritchie says, "your legs are sore? Why, have you guys been spreading them all over the office again?" Fred laughed and the other individual slightly chuckled. I said to Fred, "that was so rude," and then Fred said, "no it wasn't," and Geri said, "yes it was." Fred continued to laugh. I then told him, "Fred, I don't know how you think up these things in your head." It was clear that I was offended and quite angry. I then left the room, thought about it for a while, and then called my manager, Kevin Wilczynski, who recommended I speak to Dawn Melillo, Sr. HR Rep.
>
> My wish is not for Fred to get in trouble, but for him to learn his boundaries. He so often makes offensive remarks and without having documented incidences, it's difficult for me to advise you of all of them in the 4.5 years that I have been employed with FedEx. I am not singled out, Fred's inappropriate comments are made to many people and some of them just laugh it off, which I believe encourages him to continue. Fred Ritchie is not a bad man and in a way I feel badly about having to report this incident, however, I think that it's time he stopped this behavior.

25 Declaration of Michelle N. Piza ("Piza Decl.") (Dkt. #121), Ex. 1. Ritchie does not deny
26 making the statement and agrees that it was "something along those lines." Declaration of

ORDER DENYING PLAINTIFF'S PARTIAL MOTION
FOR SUMMARY JUDGMENT AND GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT- 4

Richard S. McConnell ("McConnell Decl. I") (Dkt. #122), Ex. A (emphasis added).

During the investigation of these complaints, Federal Express also became aware of other incidents of concern. Most prominently, investigators learned that Ritchie had brought a Christmas card to the office that contained a photograph of a woman exposing her genitals. Michelle Piza confirmed that Ritchie showed her the card and that she believed that the card was inappropriate. Ritchie acknowledges that he brought such a card into the office and that other people viewed the card. McConnell Decl. II, Ex. C.

On January 10, 2003, Ritchie was notified by phone and by mail that he was being placed on investigative suspension with pay. The investigation was carried out by Holly Harris and Managing Director of Technology Services, John Lowey. The investigation included an interview with Ritchie to discuss the allegations. On January 28, 2003 Ritchie was terminated for violating the company's Acceptable Conduct Policy. Ritchie initiated his appeal on the same day.

### III. DISCUSSION

Generally, "an employment contract indefinite in duration may be terminated by either the employer or the employee at any time, with or without cause." Swanson v. Liquid Air Corp., 118 Wn.2d 512, 520 (1992). Ritchie's Employment Agreement explicitly states that his employment with Federal Express was to "be for an indefinite period and may be terminated at any time without notice," and that his employment was "contingent upon completion of all employment requirements of whatever position I may hold to complete satisfaction of Company." Ritchie Decl., Ex. 3. Therefore, at the time he was hired, Ritchie's employment with Federal Express could be terminated by either party at any time, with or without cause.[1]

---

[1] Ritchie maintains that he was told at some point before he signed his contract that he could not be fired without cause and a hearing and that he "did not understand" that this agreement had been modified by the "unmentioned" disclaimer contained in the Employment Agreement. He provides little detail of this earlier "offer," or why such assurances were not included in either his offer letter or the Employment Agreement. In any event, such oral assurances do not create an implied employment

ORDER DENYING PLAINTIFF'S PARTIAL MOTION
FOR SUMMARY JUDGMENT AND GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT- 5

An at-will employment arrangement can be modified, however, in three ways: (1) by an express agreement which specifies other terms and conditions of employment; (2) by an implied contract that arises from the conduct of the parties; or (3) irrespective of an implied contract, when an employer makes a promise of specific treatment in specific situations. Kuest v. Regent Assisted Living, 111 Wn. App. 36, 48 (2002). Federal Express argues that its employment agreement with Ritchie was at-will and that no modifications were made to that aspect of their agreement at any time. Ritchie maintains that the People Manual, either contractually or through promises for specific treatment in specific situations, modified his at-will relationship with Federal Express.

**A.     Express or Implied Contract**

An "at-will employment relationship may be modified by contract, express or implied, but such modification is subject to the usual rules applicable to contract formation." Kuest, 11 Wn. App. at 50. Therefore, in order to establish that the Employment Agreement was contractually modified by the People Manual, Ritchie must demonstrate that Federal Express offered different employment terms after he began employment, and that he accepted those terms and gave consideration. Id. at 51. The consideration given must be in addition to the services he was required to provide as part of his job and must result in a detriment to him and a benefit to Federal Express. Roberts v. Atlantic Richfield Co., 88 Wn.2d 887, 895 (1977); see also Thompson v. St. Regis Paper Co., 102 Wn.2d 219, 228-29 (1984).

Ritchie argues that he provided such consideration through his "exceptional job performance," "unswerving loyalty," and "dedication foregoing countless job offers and his legal right to unionize." Plaintiff's Response at p. 9. Longevity of service and foregoing other job opportunities, however, do not constitute sufficient consideration to create either an implied or an express contract for altering the at-will nature of the employment relationship. Roberts, 88

---

contract. See Lawson v. Boeing Co., 58 Wn. App. 261, 265 (1990).

ORDER DENYING PLAINTIFF'S PARTIAL MOTION
FOR SUMMARY JUDGMENT AND GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT- 6

Wn.2d at 895-96. Foregoing the legal right to unionize can provide sufficient consideration, Swanson, 118 Wn.2d at 524, but Ritchie has failed to provide any factual support for his contention he gave up a right to unionize in exchange for the policies contained in the People Manual. No mention of foregoing such a right is contained in either of Ritchie's declarations, nor does it appear in his motion for summary judgment. The first and only mention of this claim is contained in a single sentence in his response to defendant's motion for summary judgment. Without any evidence of additional consideration, plaintiff's claims for breach of express contract and breach of implied contract cannot survive summary judgment. See Kuest, 11 Wn. App. at 51.

**B.    Specific Promise for Specific Treatment & Promissory Estoppel**

The Washington Supreme Court also recognizes a cause of action when,

> an employer, for whatever reason, creates an atmosphere of job security and fair treatment with promises of specific treatment in specific situations and an employee is induced thereby to remain on the job and not actively seek other employment, those promises are enforceable components of the employee relationship.

Thompson, 102 Wn.2d at 230. This claim rests on a justifiable reliance theory and does not require the same contractual analysis that is necessary for an implied or express contract claim. Korslund v. Dyncorp Tri-Cities Servs., Inc., 156 Wn.2d 168, 184-85 (2005). An employee seeking to enforce promises that an employer makes in an employee handbook under this theory must prove: (1) that a statement in the employee handbook amounts to a promise of specific treatment in specific situations; (2) that they justifiably relied on the promise, and (3) that the promise was breached. Bulman v. Safeway, Inc., 144 Wn.2d 335, 340-41 (2001). Each element presents a question for the trier of fact unless reasonable minds could reach but one conclusion. Korslund, 156 Wn.2d at 185.

**1.    Specific Promise & Justifiable Reliance**

Plaintiff argues that the People Manual promised specific treatment in two ways relevant to his dismissal. First, he argues that the Guaranteed Fair Treatment Procedure ("GFTP")

ORDER DENYING PLAINTIFF'S PARTIAL MOTION
FOR SUMMARY JUDGMENT AND GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT- 7

contained in the People Manual required progressive discipline.  Second, he contends that the company was required to conduct a full, fair and objective investigation in accordance with the GFTP prior to his termination.

Where a handbook provision describes policies that are discretionary or optional on the part of the employer, they will not be specific enough to create a binding promise.  Stewart v. Chevron Chem. Co., 111 Wn.2d 609, 613-14 (1988) (where handbook "used the terms 'shall,' 'will,' and 'must,' but in the layoff provision used 'should,' indicating Chevron intended the provision to be advisory," the provision was not sufficiently specific to be binding); see also Hill v. J.C. Penny, Inc., 70 Wn. App. 225, 236 (1993) ("A 'promise' in a manual is not binding if its performance is optional or discretionary on the part of the promisor.").  Though progressive discipline is discussed in the People Manual's "Acceptable Conduct" policy, there is nothing to indicate it is mandatory.[2]  The policy states that "a manager may issue a warning letter and a disciplinary suspension without pay," if the manager "decides not to terminate an employee for a serious violation."  McGuigan Decl., Ex. 3.  A manager also "may return the employee to work and issue a warning letter as a means of discipline for the policy violation."  Id.

Nothing in the "Acceptable Conduct" policy prohibits Federal Express from terminating an employee before first utilizing its progressive discipline procedures.  In fact, it expressly states that a number of specific violations "may result in severe disciplinary action up to and including discharge."  Id.  Included in that list of specific violations is "displaying blatant or public disrespect toward any employee or customer while on duty, on Company property, at collection sites, or at off-site Company meetings and functions," a "[l]eadership failure of a member of management," or "[a]ny other act obviously and significantly detrimental to the best interest of FedEx Express and/or fellow employees as determined by management."  Id.  The

---

[2]As a manager, Ritchie himself terminated an employee for a first time violation of the "Acceptable Conduct" policy in 1995.  Harris Decl., Ex. 2.

ORDER DENYING PLAINTIFF'S PARTIAL MOTION
FOR SUMMARY JUDGMENT AND GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT- 8

progressive discipline procedures laid out in the People Manual's "Acceptable Conduct" policy are discretionary and do not constitute promises for specific treatment.

Whether the People Manual's "Acceptable Conduct," GFTP, and "Sexual Harassment" policies require a full and fair investigation prior to termination is a more difficult question, which involves disputed questions of material fact. The "Acceptable Conduct" policy states in discretionary terms that "[a]ll alleged violations should be thoroughly investigated and documented." Id. The GFTP, however, states that "[a]n employee's *right* to participate within the guidelines of the process is *guaranteed*." Id. (emphasis added). It goes on to state that "[a]ll employees who receive discipline, including termination, or treatment that they believe to be unfair are eligible to participate in the GFTP/EEO process." Id. Other provisions in the GFTP also appear to take on a mandatory dimension: "The GFTP/EEO process for nondiscrimination issues is a 3-step process that requires specific individuals to perform specific actions within a designated timeframe." Id. The "Sexual Harassment" policy also indicates the GFTP process is mandatory:

> All sexual harassment complaints will be treated as internal EEO complaints and follow the internal EEO procedure as outlined in 5-5 Guaranteed Fair Treatment Procedure/EEO Complaint Process, Table 2. Internal EEO Discrimination or Harassment Complaint Procedure. All complaints will be promptly and thoroughly investigated in as confidential a manner as possible.

Id.

Federal Express counters that the disclaimers contained in the Employment Agreement, People Manual and Employee Handbook prevent it from being bound by any specific promises that may be contained in the People Manual. An employer can avoid being bound by statements contained in employment manuals by specifically stating "in a conspicuous manner that nothing contained therein is intended to be part of the employment relationship and are simply general statements of company policy." Thompson, 102 Wn.2d at 230. In addition to the broad disclaimers contained in these documents which are quoted in Section II(A), there are also

ORDER DENYING PLAINTIFF'S PARTIAL MOTION
FOR SUMMARY JUDGMENT AND GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT- 9

disclaimers contained in each of the relevant policy provisions in the People Manual. The "Acceptable Conduct" policy, for instance, has a section entitled "Employment at Will," which states that:

> The employment relationship between the Company and any employee may be terminated at the will of either party as stated in the employment agreement signed upon application for employment. As described in that agreement, the policies and procedures set forth in this manual provide guidelines for management and employees during employment but do not create contractual rights regarding termination or otherwise.

McGuigan Decl., Ex. 3. The "Termination" policy contains an identical disclaimer, and the GFTP includes a similar, but slightly different disclaimer:

> The GFTP/EEO process is the exclusive remedy for all disputes or work-related complaints arising from an employee's employment or termination from employment. As described in the employment agreement signed upon application for employment, the policies and procedures set forth by the Company provide guidelines for management and other employees during employment, but do not create contractual rights regarding termination or otherwise.

Id.

"[A]scertaining the effect of a disclaimer will often involve factual determinations which must be resolved by the trier of fact if there are factual disputes or if there is more than one inference from the evidence." Swanson, 118 Wn.2d at 528. One factual determination that must be made is whether the disclaimer was effectively communicated to the employee. Id. at 529. In this instance, the presence of multiple disclaimers and signed acknowledgments provide compelling evidence that the disclaimer was effectively communicated to Ritchie. See Id. 530, 535 (indicating that signed acknowledgments and disclaimers contained on the same documents that plaintiff relies on for their specific treatment claim are strong signs of effective communication). Ritchie himself administered these policies frequently in his position as a manager and it is likely that he was aware of these disclaimers as a result.

Even if the disclaimer was effectively communicated, however, "[a]n employer's inconsistent representations can negate" its effect. Swanson, 118 Wn.2d at 532. As the

ORDER DENYING PLAINTIFF'S PARTIAL MOTION
FOR SUMMARY JUDGMENT AND GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT- 10

<u>Swanson</u> court explained,

> an employer is not entitled to make extensive promises as to working conditions–promises which directly benefit the employer in that employees are likely to carry out their jobs satisfactorily with promises of assured working conditions–and then ignore those promises as illusory.

<u>Id.</u> at 536. "Communications containing statements that have overcome disclaimers have included employee policy manuals and oral assurances. Examples of statements that have overrun disclaimers to the contrary are detailed grievance or disciplinary procedures to be taken before discharge and exclusive lists of reasons for discharge." <u>Id.</u> at 532. The impact of any inconsistent representations on the effectiveness of the disclaimer can only be determined after "[a]ll the circumstances, and the representations and practices of the employer" are examined. <u>Id.</u> at 534-35.

Here, there are a number of facts that could support a finding that Federal Express negated the coverage of the disclaimer in the context of termination procedures. Ritchie contends that he was told that he was required to follow the GFTP as a member of management and that he had administered the policy with that understanding. He has produced a number of declarations from other Federal Express employees indicating that they too believed the policies were mandatory. <u>See</u> Declaration of Mark O'Neill, Declaration (Dkt. #115), Declaration of Sharon Olsen (Dkt. #116), and Declaration of Barbara Stoll (Dkt. #117). Further, the language of the disclaimer contained in the GFTP, indicating that the "GFTP/EEO process is the exclusive remedy for all disputes or work-related complaints arising from an employee's employment or termination from employment" makes the scope of the disclaimer, at least as it relates to the right of employees to utilize the GFTP, less than clear. Federal Express Senior Human Resource Representative Holly Harris herself acknowledges that the GFTP/EEO policy "guarantees an employees [sic] access to use the procedure's guidelines for his/her complaint of unfair treatment." Harris Decl. ¶ 13. Because these questions involve disputed issues of material fact, they are not appropriately decided on summary judgment.

ORDER DENYING PLAINTIFF'S PARTIAL MOTION
FOR SUMMARY JUDGMENT AND GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT- 11

**2.     Breach**

That said, even if Ritchie could establish the presence of specific promises (or an implied or express contract), his claim would nevertheless fail because he has put forward no material facts to support his assertion that Federal Express has breached such promises. Whether or not is was required to do so, the undisputed facts indicate that Federal Express terminated Ritchie only after conducting a full investigation in accordance with the procedures spelled out in the People Manual.

Ritchie argues his termination constituted a breach of Federal Express' specific promises because (1) "the investigation was a sham;" (2) he was denied his right to appeal; and (3) there "was no basis for summary firing." Plaintiff's Motion at pp. 21-24. Ritchie's first alleged breach cannot succeed because he does not claim that a "full and fair" investigation would have produced substantially different findings than resulted from Federal Express' actual investigation. Though Ritchie makes extensive reference to falsified complaints, falsified evidence, false statements, intentional misrepresentations, unsubstantiated rumors and unsubstantiated evidence, remarkably, he does not challenge in any substantive way the three allegations that formed the basis of Federal Express' decision to terminate his employment. He admits, for instance, that he told Renee Moore that she would bust her "milk sack" lifting the box. The only factual aspect of Federal Express' conclusion that he challenges his contention that he said "milk sack," not "milk sacks." He also admits that he apologized to Moore the following day because his comment was "offensive." McConnell Decl. I, Ex. A. Nor does he dispute making the statement to Michelle Piza or the allegation that he showed other Federal Express employees a Christmas card depicting a woman exposing her genitals. Id. Given these admissions, it is impossible for any rational fact finder to conclude that the investigation was a "sham."

Ritchie has also not put forward material facts to support his contention that Federal Express failed to provide him with sufficient facts to enable a meaningful appeal. He

ORDER DENYING PLAINTIFF'S PARTIAL MOTION
FOR SUMMARY JUDGMENT AND GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT- 12

specifically contends that John Lowey and Holly Harris refused to provide him with the specifics of the allegations filed against him prior to his termination. Motion at p. 13. He also claims that his ability to appeal was hindered because his termination letter failed to apprise him of the necessary factual background to the allegations. These claims run contrary to the unchallenged facts. In his deposition, Ritchie admits that he actually discussed all three incidents with both Harris and Lowey during the interview they conducted with him after his suspension, but prior to his termination. McConnell Decl. I, Ex. A. His knowledge of the factual basis of the allegations is evidenced by the fact that Ritchie proceeded to file an appeal of his termination which contained a detailed written statement addressing all three of the allegations discussed in his earlier interview. See McConnell Decl. II, Ex. C. In short, Ritchie has put forward no factual support for his allegation that Federal Express denied him information necessary for him to make a meaningful appeal.[3]

Finally, Ritchie's argument that there was "no basis for his summary firing" is also without merit. A decision to terminate an employee is considered to be for just cause when it is not made "for any arbitrary, capricious, or illegal reason" and the decision "is based on facts (1) supported by substantial evidence and (2) reasonably believed by the employer to be true." Baldwin v. Sisters of Providence in Washington, Inc., 112 Wn.2d 127, 139 (1989). As has already been discussed, Ritchie admits that the factual conclusions of Federal Express' investigation are largely accurate. There is therefore no dispute as to whether the decision to terminate his employment was based on accurate information. Based on those facts, Federal Express reasonably concluded that his behavior violated the "Acceptable Conduct" policy and that termination was justified. While Ritchie certainly disagrees with the decision to terminate

---

[3] Ritchie also contends that his right to appeal was denied because Vice President Larry Netter unilaterally determined that he would conduct the appeal "without the required senior vice president." There was no senior vice president in the chain of command at the time of Ritchie's termination. Harris Decl. at ¶ 18. The policy clearly contemplates such a situation and for that reason states that "*when* multiple levels of management exist a consensus decision is rendered." (emphasis added).

ORDER DENYING PLAINTIFF'S PARTIAL MOTION
FOR SUMMARY JUDGMENT AND GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT- 13

his employment, he has put forward no facts that would indicate that Federal Express acted for an "arbitrary, capricious or illegal reason." Even if the GFTP guarantees an employee's right to participate within the guidelines of the process, "the outcome is not ensured to be in the employee's favor." McGuigan Decl., Ex 3. Due to the lack of dispute over material facts on the element of breach, Ritchie's claims for breach of a specific promise and promissory estoppel[4] cannot survive summary judgment.

## C.     Negligent and Intentional Infliction of Emotional Distress

Federal Express' motion for summary judgment on Ritchie's claims for negligent and intentional infliction of emotional distress is also granted. Ritchie does not oppose Federal Express' motion on his negligent infliction of emotional distress claim, but argues that his intentional infliction of emotional distress claim should survive because Washington law does not require him to demonstrate that his claim is susceptible to medical diagnosis and provable with medical evidence. Ritchie is correct that an intentional infliction of emotional distress claim does not require such evidence, but he still must put forward proof of (1) extreme or outrageous conduct; (2) intentional or reckless infliction of emotional distress, and (3) resulting actual severe emotional distress. Kloepfel v. Bokor, 149 Wn.2d 192, 194-95 (2003). Such a claim must be based on conduct "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" Id. at 198 (quoting Grimsby v. Samson, 85 Wn.2d 52 (1975)). Ritchie in this instance has not put forward evidence to support an allegation that Federal Express' actions rose to the level of "extreme or outrageous conduct." Nor has he put forward any evidence to support an allegation that Federal Express intentionally sought to inflict emotional

---

[4] Washington courts treat claims for promissory estoppel and breach of a specific promise as one in the same. Shaw v. Housing Auth. of City of Walla Walla, 75 Wn. App. 755, 760-761 (1994). Given that Ritchie has failed to establish any facts to support a breach of the promise at issue, his promissory estoppel claim cannot proceed.

ORDER DENYING PLAINTIFF'S PARTIAL MOTION
FOR SUMMARY JUDGMENT AND GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT- 14

distress. As such, his claim for intentional infliction of emotional distress cannot proceed.

## IV. CONCLUSION

For all the foregoing reasons, plaintiff's motion for partial summary judgment (Dkt. #112) is DENIED. Defendant's motion for summary judgment (Dkt. #121) is GRANTED.

DATED this 16th day of April, 2007

*/s/ Robert S. Lasnik*
Robert S. Lasnik
United States District Judge

ORDER DENYING PLAINTIFF'S PARTIAL MOTION
FOR SUMMARY JUDGMENT AND GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT- 15